Nicola **PANICHELLA**

v.

**PENNSYLVANIA RAILROAD COMPANY, Appellant**

**WARNER BROTHERS PICTURES, INC.,
Third-Party Defendant.**

No. 12810.

United States Court of Appeals
Third Circuit.

Argued May 5, 1959.

Decided June 12, 1959.

Rehearing Denied July 14, 1959.

See also 252 F.2d 452.

John David Rhodes, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for appellant.

James P. McArdle, Pittsburgh, Pa. (John A. DeMay, Gene K. Lynch, Pittsburgh, Pa., on the brief), for plaintiff-appellee Nicola Panichella.

J. Lawrence McBride, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for appellee Warner Bros. Pictures, Inc.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The question posed by this appeal is a narrow one. Is a clear and precise release executed by a railroad employee discharging a named party and all other persons, firms and corporations of and from any and all claims, demands, rights and causes of action whatsoever arising by reason of a specific accident effective to bar the employee's action under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. § 51 et seq., against his employer-railroad for damages sustained in the same accident described in the release?

Plaintiff, Nicola Panichella, brought the action below under the FELA against the defendant-railroad to recover damages for injuries sustained when he fell upon a public sidewalk in Greensburg, Pennsylvania, on December 14, 1950. The railroad filed an answer and joined as third-party defendant Warner Brothers pictures, Inc., the owner-occupant of the property adjoining the sidewalk upon which the accident occurred.

Plaintiff was employed by the railroad as a trackman and on December 13, 1950, reported for work at 7:00 a. m. During the day he was assigned to sweeping switches clean of the snow that covered the area. There had been a recent snowfall that, combined with the accumulation from a severe snow storm of a few weeks earlier, necessitated overtime work. As a result of his seniority, plaintiff was given an opportunity to volunteer for overtime work, which he did. Following his second eight-hour shift, the plaintiff continued to work up until the time the accident occurred at approximately 7:00 a. m. December 14, 1950. The railroad supplied plaintiff an evening meal at the Palace Restaurant and a packaged lunch which he ate during the night of December 13.

The following morning at about 7:00 a. m. plaintiff was directed to return to the same restaurant, about a mile distant from his place of work, for the purpose of having breakfast and bringing back lunch for himself and his foreman. To reach the restaurant he had to walk through a public park and along public sidewalks. While en route plaintiff slipped and fell on the sidewalk abutting the Warner property. The condition of the sidewalk was variously described as rough ice topped with light snow; ice in ridges, wavy-like and a little rough; and as covered with a very thin slush. There had been some overnight snowfall.

The injury sustained by the plaintiff was a transverse fracture of the first lumbar vertabra. Hospitalization for about a month followed, and plaintiff remained in a body cast for twelve weeks. He lost about six months employment as a result of the injury and upon return to his former work claimed residual pain. At the time of trial plaintiff was 65 years of age.

Prior to the institution of the instant action, plaintiff engaged an Irwin, Pennsylvania, attorney to represent him. The attorney negotiated a settlement with The Travelers Insurance Company, liability carrier for Warner. The settlement called for payment of $1,375, and prior to execution of the release it was explained to plaintiff by his attorney. It was executed on October 28, 1952, twenty-two months after the accident. The railroad paid none of the consideration for the release, and was not a party to it, nor in fact was it aware of the settlement until November 4, 1952.

At the trial, both the railroad and the third-party defendant relied upon the release, which is set forth in the margin.[1]

After some deliberation, the trial court concluded that the release was clear and unambiguous and to be construed as a matter of law, and the jury was never advised of its existence. The court denied the railroad's motion for directed verdict. The jury returned special findings as follows: the railroad was 55% negligent; plaintiff was 45% negligent; damages were in the amount of $30,000; Warner was not guilty of negligence which was the proximate cause of the accident. Accordingly, judgment was entered in favor of the plaintiff in the amount of $16,500 and credit subsequently allowed for $1,375, the amount plaintiff received from Travelers in consideration for the release to Warner. The railroad's mo-

[1]
"GENERAL RELEASE—INDIVIDUAL

"KNOW ALL MEN BY THESE PRESENTS:
"That I, Nicholo Panichelli, residing at 409 White Street, Greensburg, Penna., being of lawful age, for the sole consideration of One thousand three hundred seventy five & no dollars ($1,375.00) to me in hand paid, receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and for my heirs, executors, administrators, and assigns do hereby remise, release, and forever discharge Warner Brothers Pictures, Incorporated and his, her, their, and its successors and assigns, heirs, executors, administrators, and all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof, resulting, and to result, from a certain accident which happened on or about the 14th day of December 1950, for which I have claimed the said Warner Brothers Pictures, Incorporated to be legally liable, which liability is hereby expressly denied.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal the 28th day of October in the year one thousand nine hundred fifty-two (1952).
"Sealed and delivered in the presence of

"[Sgd.] NICHOLO PANICHELLI
Nicholo Panichelli

"Witness [Sgd.] MAX M. BERGAD
Address Irwin Pa.
Witness [Sgd.] EDMUND J. McDONALD
Address 309 Main St., Irwin Pa.

"STATE OF PENNSYLVANIA
COUNTY OF WESTMORELAND } ss:

"On this 28th day of October 1952 before me personally appeared Nicholo Panichelli to me known, and known to me to be the same person described in and who executed the above instrument and he (or she) acknowledged to me that he (or she) executed the same.
"[Sgd.] EDMUND J. McDONALD
Justice of the Peace
"My Commission Expires First Monday in January, 1958"
(SEAL)
The difference in spelling of the plaintiff's name in the release and in the caption of the case is of no significance.

tions for judgment n. o. v. or a new trial were denied.[2]

The main contention of the defendant-railroad on this appeal is that the trial court erred in failing to hold that the release obtained by Travelers Insurance Company, on behalf of Warner, inured to its benefit and therefore precluded recovery. Plaintiff, while admitting the validity of the release as such, contends that the railroad's attempt to utilize or gain the benefit of the release is an artifice and prohibited by Section 5 of the Act of April 22, 1908, 35 Stat. 66, 45 U.S.C.A. § 55.[3]

■ Although the railroad has expressed some doubt as to whether federal or state law should apply in regard to the effect of this release, we agree with the plaintiff that this is a case for the application of federal law. The right was created by federal law, and whether subsequent acts of the plaintiff have extinguished it should be determined by federal law. As the Supreme Court stated when considering this question in South Buffalo Railway Co. v. Ahern, 1953, 344 U.S. 367, 372, 73 S.Ct. 340, 343, 97 L.Ed. 395, "* * * peculiarities of local law may not gnaw at rights rooted in federal legislation." This admonition is especially apropos in considering rights granted to railroad employees by Congress under the FELA. Also see Dice v. Akron, C. & Y. R. R. Co., 1952, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398.

■ As the plaintiff readily admits, Section 5 of the Act of April 22, 1908, was never intended to forbid bona fide agreements of release. The Supreme Court considered an attack upon releases per se in Callen v. Pennsylvania R. R. Co., 1948, 332 U.S. 625, 631, 68 S.Ct. 296, 298, 92 L.Ed. 242, and held that "* * * a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." Accord, South Buffalo Railway Co. v. Ahern, supra; cf. Dura Electric Lamp Co. v. Westinghouse Electric Corp., 3 Cir., 1957, 249 F.2d 5.

The release in question is conceded to be bona fide in and of itself. The plaintiff could hardly· contend otherwise, for it was negotiated by his then attorney, for a substantial consideration, twenty-two months after the accident, signed only after a thorough explanation by his attorney and a complete disclosure by Travelers Insurance Company of its contents. There has been no allegation of overreaching and none can be discerned.

However, plaintiff contends that although a bona fide release negotiated and paid for by a railroad is a valid defense in an FELA case, the use of an admittedly bona fide release not obtained by the railroad and not paid for by it is invalid under the terms of Section 5 of the Act of April 22, 1908. He admits that the broad terms of the release would cover the railroad but contends that its use of it, without any connivance or agreement with Warner whatsoever, is a prohibited artifice. We fail to discern the rationality of this argument, for it was the act of the employee who voluntarily, knowingly, and advisedly entered into the release which extinguished his rights and not any act of the railroad. The railroad merely brought the fact of the release to the attention of the court

2. Panichella v. Pennsylvania Railroad Co., D.C.W.D.Pa.1958, 167 F.Supp. 345.

3. "Contract, rule, regulation, or device exempting from liability; set-off.

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in

any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." 45 U.S.C.A. § 55.

in order to have the law operate thereon. In effect this is no different than the act of the railroad in bringing to the attention of the court a release it had negotiated. Assuming a bona fide release in either case, there is no artifice. It is indeed far-fetched to contend that the mere act of bringing to the attention of a court facts which are relevant to the defense of a suit is an artifice.

The only other case in which this problem has been considered, Falco v. Pennsylvania R. R. Co., 1951, 202 Misc. 769, 109 N.Y.S.2d 279, concluded that since a general release to the employer-railroad is not proscribed, the reasoning underlying that holding is even more cogent when the employer is not a party to the release. For, in the latter case, there is less danger that the disparity of bargaining power will adversely affect the negotiation.

The judgment in the main action will be reversed.

Appeal was also taken by the railroad from the judgment in favor of the third-party defendant. In view of what we have heretofore said, the judgment in favor of Warner Brothers Pictures, Inc., will be affirmed.