Present: Carrico C.J., Compton, Lacy, Hassell, Keenan, Kinser, JJ., and Whiting, Senior Justice

MICHAEL J. DOWNER

OPINION BY

v.  Record No. 972657     SENIOR JUSTICE HENRY H. WHITING
                              NOVEMBER 6, 1998

CSX TRANSPORTATION, INC.


FROM THE CIRCUIT COURT OF YORK COUNTY
Prentis Smiley, Jr., Judge

This is an appeal of an action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. (1981) (FELA).

Michael J. Downer filed this FELA action against Amoco Oil Company (Amoco) and his employer, CSX Transportation, Inc. (CSX), alleging that he was injured when those parties negligently exposed him to noxious chemicals at Amoco's Yorktown Refinery. Downer settled his claim against Amoco upon its payment of $5,000 in exchange for Downer's covenant not to sue and the consequent dismissal of Amoco as a party defendant.[1]

---

[1] Downer's release of Amoco did not release CSX. Code § 8.01-35.1 provides in pertinent part:

> A.  When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury . . . :
>
> 1. It shall not discharge any of the other tortfeasors from liability for the injury . . . ; but any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is greater.

Subsequently, a jury rendered a verdict of $5,000 in Downer's favor against CSX. CSX moved to reduce the verdict by the amount paid by Amoco in settlement of Downer's claim against it in accordance with Code § 8.01-35.1(A)(1). The trial court sustained CSX's motion, reduced the amount of the verdict by $5,000, and entered judgment against CSX for costs only. Downer appeals and CSX assigns cross-error.

Consistent with well-settled appellate principles, we state the evidence of liability in the light most favorable to Downer, who has received a verdict in his favor. In the summer and fall of 1991, Amoco employees loaded a liquid solution of sodium hydroxide into tank cars parked on the railroad tracks at its Yorktown refinery. Sodium hydroxide is a noxious chemical that can become airborne on hot, windy days. Amoco placed drip pans under the tank cars to contain any sodium hydroxide spills.

On July 9th, 1991, a hot, windy day, Downer was engaged in switching operations at the Yorktown refinery and was required to be near the drip pans. At that time, Downer became short of breath, spit up mucus, experienced a burning sensation in his eyes, and suffered an injury to his upper respiratory tract by inhaling fumes from the nearby sodium hydroxide. Downer was taken to a hospital, treated for two days, and released to his home for recuperation. Three weeks later, complaining of pain and breathing problems, Downer was hospitalized for an

2

additional eight days.  Downer testified that during this hospitalization, he suffered additional stress when a priest administered the last rites to him.

After returning to work at the end of August, Downer was again engaged in switching operations near the drip pans at Amoco's Yorktown refinery on September 10th, another hot, windy day.  On that date, he again inhaled the fumes from the airborne sodium hydroxide and suffered the recurrence of some of his earlier symptoms.  He was treated as an outpatient at a hospital and did not return to work until November 20, 1991.

Upon his return to work, Downer, asserting his right to do so under CSX's collective bargaining agreement, asked to resume his work in the Yorktown area.  However, CSX advised him that he could not do so because Amoco did not want him working at its refinery.  Downer was shown Amoco's letter stating that:

> [i]t is Amoco Oil Company's desire that Mr. Downer not be permitted any further access of Amoco's Yorktown Refinery location. Such request is being made as there now exists an adversarial relationship between Amoco Oil Company and Mr. Downer, with his seeking damages against Amoco for the alleged injurious exposure on Amoco's property.  Secondly, although Amoco disputes Mr. Downer's allegations that he suffered adverse reactions to his exposure to a toxic substance at the Yorktown Refinery, we certainly do not wish in any way to contribute to any illness or injury to Mr. Downer as a result of his being hypersensitive to any purported elements found on the Amoco property.

Because of CSX's acquiescence in Amoco's decision not to allow Downer to enter its Yorktown refinery property and

because Downer could not work in the Yorktown area without entering Amoco's property, CSX assigned him to work on a route beginning and ending in Richmond. This transfer was against Downer's wishes because it required him to commute each working day between his assignment in Richmond and his home in the Yorktown area. Additionally, Downer allegedly suffered humiliation because junior men were working the job he wanted "and it's not like I did anything wrong [at Amoco's refinery], but I was being punished for it."

First, Downer argues that by acquiescing in Amoco's decision, CSX increased his damages. On brief, Downer acknowledges that the court permitted an instruction regarding Downer's inconvenience and humiliation Nevertheless, he complains that the court erroneously refused to permit him to argue his claims for damages arising from the inconvenience and humiliation he suffered as a result of Amoco's refusal to permit him to work at its Yorktown refinery.

The transcript discloses that although the court had earlier instructed Downer not to assert these claims in his final arguments to the jury, he did so briefly and the court overruled CSX's objection thereto. Under these circumstances, we conclude that Downer was not prejudiced by the court's

4

earlier ruling, even if erroneous, a matter we need not decide. Hence, we reject this contention.

Next, Downer argues that the court erred in refusing to set aside the $5,000 verdict as inadequate and award a new trial on the issue of damages. Downer suggests that

> [r]easonable people could conclude that $5,000 was not reasonable compensation for a person who had $1,400 in undisputed lost wages, required two hospitalizations for a total of ten days, required two visits to the emergency room, experienced intense pain and suffering, was confined to his home for at least a month and whose condition was so affected that he was out of work for seventeen weeks.

(Emphasis added.)

Downer postulates a principle contrary to our well established precedent. We have repeatedly held that a jury's award of damages may not be set aside by a trial court as inadequate or excessive unless the damages are so excessive or so small as to shock the conscience and to create the impression that the jury has been influenced by passion or prejudice or has in some way misconceived or misinterpreted the facts or the law which should guide them to a just conclusion. E.g., Poulston v. Rock, 251 Va. 254, 258, 467 S.E.2d 479, 481 (1996) (excessive verdict); Johnson v. Smith, 241 Va. 396, 400, 403 S.E.2d 685, 687 (1991) (inadequate verdict).

These principles presuppose that a trial court will not set aside a verdict either as inadequate or as excessive merely

5

because the court may have awarded a larger or smaller sum had it been the trier of fact.  See Reel v. Ramirez, 243 Va. 463, 467-68, 416 S.E.2d 226, 228 (1992)(allegedly excessive and inadequate successive verdicts); Raisovich v. Giddings, 214 Va. 485, 489, 201 S.E.2d 606, 609 (1974) (allegedly inadequate jury award); Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964) (allegedly excessive verdict).

Hence, in deciding whether the jury's award is inadequate, the test is whether reasonable people could not conclude that the $5,000 award was reasonable compensation in this case.  See Bradner v. Mitchell, 234 Va. 483, 487, 362 S.E.2d 718, 720 (1987)(stating that if "no rational fact-finder" could disregard uncontroverted and complete evidence of special damages, such damages must be considered fixed constituent part of verdict in determining inadequacy of jury award); Dinwiddie v. Hamilton, 201 Va. 348, 354, 11 S.E.2d 275, 279 (1959) (reversing order setting verdict aside because adequacy of earlier jury award "was a question on which reasonable minds could differ").

We apply those principles here.  And, since Downer attacks the sufficiency of the verdict, we view the evidence of damages in the light most favorable to the validity of the verdict. Mutual Ben. Health & Acc. Ass'n v. Hite, 184 Va. 614, 617, 35 S.E.2d 743, 744 (1945)

6

There are several considerations supporting the quantum of the jury's award.  Downer does not claim a permanent injury or disability.  Since his doctors considered some of his complaints to be out of proportion to what they could find physically wrong with him, the complaints were thus characterized by the doctors as the result of psychological stress.  Downer recognizes that such complaints are subjective.  The weight to be given such complaints is dependent on the jury's assessment of the plaintiff's credibility.

Additionally, the jury was instructed without objection that it could reduce the amount of Downer's recovery "in proportion to the relative negligence of the plaintiff and defendant."[2]  Given these considerations, we think that reasonable persons could conclude the award was adequate.

Code § 8.01-383 vests discretion in a trial court in deciding whether a verdict should be set aside on the grounds of excessiveness or inadequacy.  Johnson, 241 Va. at 400, 403 S.E.2d at 687.  Thus, the ultimate test on appeal to this Court is whether the trial court abused its discretion in ruling on motions to set aside verdicts as inadequate or excessive.  Id. We cannot say that the trial court abused its discretion in refusing to set aside the verdict as inadequate.

---

[2]The instruction was in conformity with the FELA comparative negligence rule.  45 U.S.C. § 53.

7

In his final assignment of error, Downer maintains that the court's "offset" of Amoco's settlement payment against the $5,000 verdict against CSX was void as a violation of the following provision of 45 U.S.C. § 55:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act shall to that extent be void. Provided, that in any action brought against such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that it may have paid to the injured employee . . . on account of the injury . . . for which said action was brought.

According to Downer, CSX used the provisions of Code § 8.01-35.1(A)(1) as a "device" proscribed by 45 U.S.C. § 55 to enable CSX "to exempt itself from any liability."  However, as CSX points out, counterclaims in FELA actions have been held not to be proscribed "devices" to exempt railroads from liability. Nordgren v. Burlington Northern R. Co., 101 F.3d 1246, 1250-51 (8th Cir. 1996); Sprague v. Boston and Maine Corp., 769 F.2d 26 (1st Cir. 1985) Cavanaugh v. Western Maryland Ry. Co., 729 F.2d 289 (4th Cir.), cert. denied, 469 U.S. 872 (1984).  Nor are the assertions of the defense of releases obtained by railroads or other joint tortfeasors from FELA plaintiffs considered as such proscribed "devices."  See Callen v. Pennsylvania R.R., 332 U.S. 625, 630-31 (1948)(release obtained by railroad); Panichella v. Pennsylvania R.R., 268 F.2d 72, 75-76 (3rd Cir. 1959), cert.

8

denied, 361 U.S. 932 (1960)(tortfeasors other than the railroad). In Panichella, the court noted that "[t]he railroad merely brought the fact of the release to the attention of the court in order to have the law operate thereon." Id. Here, CSX merely brought the fact of the release and the relevant provisions of the Virginia Code to the attention of the court in order to have § 8.01-35.1(A)(1) operate thereon.

In deciding whether CSX has used a proscribed "device," we see no significant difference between the assertion of a counterclaim, a release of another joint tortfeasor, and a motion to reduce a verdict. Instead, we think that, because of Downer's release of Amoco, CSX simply invoked a statutory right designed to avoid double recoveries in cases of this kind. Thus, we find no merit in this argument.

Downer also contends that 45 U.S.C. § 55 evidences a congressional intent to preempt "state action to the contrary" as exemplified in Code §8.01-35.1(A)(1). Courts will not, however, find a Congressional intent to preempt state action in the absence of "clear and manifest purpose" to do so. CSX Trans., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)(quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). We fail to detect any such purpose in the Act. Instead, we think that the application of the Act is limited to devices created by railroads to exempt themselves from liability. Here, CSX's

9

right arose under Code § 8.01-35.1(A)(1) because of Downer's settlement with Amoco, not because of something CSX did to exempt itself from liability.  Hence we reject this contention.

In sum, we find no error in the trial court's denial of Downer's motion for a new trial.

CSX asserts assignments of cross-error, which, if sustained, would require a reversal of the judgment and entry of a final judgment in favor of CSX.  We have considered these assignments of cross-error and find no merit in them.[3]

Accordingly, the judgment of the trial court will be

<u>Affirmed</u>.

---

[3] At CSX's request, we have not considered those assignments of cross-error which would be material only if we remanded the case for a new trial.