**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2145

KENNETH SELLMAN; NANCY SELLMAN, husband and wife,

Plaintiffs – Appellants,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:21-cv-00192-JPB)

Argued:  December 7, 2023                    Decided:  June 5, 2024

Before DIAZ, Chief Judge, NIEMEYER, Circuit Judge, and Rossie David ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Alston wrote the opinion, in which Chief Judge Diaz and Judge Niemeyer joined.

**ARGUED:**  James G. Bordas, III, BORDAS & BORDAS, PLLC, Wheeling, West Virginia, for Appellants.  William Michael Harter, FROST BROWN TODD LLP, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Richard A. Monahan, Justin J. Selep, BORDAS & BORDAS, PLLC, Wheeling, West Virginia, for Appellants.  Mary Claire Davis, FROST BROWN TODD LLP, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

ALSTON, District Judge:

This case arises from an insurance dispute for losses sustained by Kenneth and Nancy Sellman as a result of a motor vehicle accident that damaged their home. The district court granted Safeco Insurance Company's ("Safeco") motion for partial summary judgment on *Hayseeds* damages. In a claim for *Hayseeds* damages, an insured party may recover reasonable attorney fees, costs, and expenses incurred in connection with their claim, where the insured has "substantially prevailed" against the insurer. *Hayseeds, Inc. v. State Farm Fire & Casualty Co.*, 352 S.E.2d 73, 74 (W. Va. 1986). The parties proceeded to trial on the remaining common law and statutory bad faith claims. The jury found in favor of Safeco, and thereafter the Sellmans moved for a new trial. The district court denied the motion. Finding no error, we affirm.

I.

On October 19, 2020, the Sellmans' home and personal property were damaged after a drunk driver crashed into their home. At the time of the accident, the Sellmans' home was insured by Safeco, and their coverage was in full force and effect. The day after the accident, the Sellmans filed a timely claim for property damage with Safeco. After receiving the claim, Safeco sent an engineer, Randal Exley, to review the damage. Shortly after receipt of the claim, Safeco also sent an adjuster to further inspect the damage in the Sellmans' home.

Throughout November of 2020, Safeco reached out to the Sellmans to review its findings regarding the claim. The Sellmans disagreed with Safeco's findings, particularly with regard to the foundational and structural damage to the house. The Sellmans then

2

retained their own contractor to examine the damage. Safeco and the Sellmans' contractor agreed that they would not have a clear understanding of the full extent of the structural damage until the interior fixtures were removed. Therefore, Safeco stated that the adjustment would happen in two phases. First, Safeco would address all the known damages. Then, it would adjust the claim for the unknown damages.

On November 17, 2020, Safeco issued the Sellmans a check for $49,500.64. In a follow-up email, a Safeco adjuster noted that the payment reflected "only the known damages" and that Safeco planned to adjust the rest of the damages based on Safeco's future findings.

From mid-January 2021 to mid-April 2021, Safeco contacted the Sellmans to determine the status of the repairs. Safeco claims that it did not receive a response to its initial correspondence to the Sellmans. It was not until April 21, 2021, that Safeco received a response from the Sellmans. Between April 21, 2021 and May 17, 2021, the Sellmans sent additional estimates. On May 25, 2021, Safeco advised the Sellmans that it would like to reinspect the home based on the newly provided estimates. The Sellmans then retained counsel, Mr. Selep, who sent a letter requesting payment of $251,540. The letter stated:

> If Safeco is willing to do the right thing and issue Mr. and Mrs. Sellman a check for $251,540.00, they will not incur any attorney fee. However, if Safeco is not willing to do the right thing, we will have to become more involved in this matter to help the Sellman's [sic] recover the benefits they are rightfully entitled to.

J.A. 415. Mr. Selep also emailed Safeco to schedule the requested reinspection.

Safeco reinspected the home with Mr. Exley and Mr. Selep on June 15, 2021. After the inspection was completed, Safeco emailed Mr. Selep to clarify the math in Mr. Selep's

3

demand letter, and Safeco then received an updated estimate from the Sellmans' contractor.

Two days after receiving the updated estimate, Safeco agreed to pay the Sellmans $251,540

dollars for the damage to their home and $14,263.03 for anticipated packing and moving

expenses.  In August 2021, Safeco stated in the claim file that the Sellmans

> retained an Attorney. . . and [a] business decision has been made and approved by Examining to settle the dwelling and other structures based on [plaintiffs'] Contractor's estimate as a final settlement.

J.A. 356.

The Sellmans filed suit against Safeco on October 7, 2021, asserting claims for

breach of the implied covenant of good faith and fair dealing, violations of the West

Virginia Unfair Claims Settlement Practices Act, and "substantially prevailing" damages

under *Hayseeds,* 352 S.E.2d at 74.  Each party moved for partial summary judgment on the

issue of *Hayseeds* damages.  After full briefing, the district court granted Safeco's motion

and denied the Sellmans' motion regarding *Hayseeds* damages.  Essentially, the district

court held that the Sellmans had not "substantially prevailed" on their claim and that the

Sellmans had not shown that their attorney's services were necessary, as is required to

recover under *Hayseeds*.  *Hayseeds,* 352 S.E.2d at 74.  The Sellmans' remaining claims

proceeded to jury trial.

In preparation for trial on the remaining two claims, the parties filed various motions

*in limine*.  After full briefing, the district court held that the Sellmans' insurance expert,

Chris A. Johnson, would be excluded because he had "not worked as a claim representative

for over 30 years, he ha[d] no apparent experience in West Virginia, and he [wa]s not a

West Virginia attorney."  Furthermore, the district court held that Safeco's insurance

4

expert, J. Rudy Martin, *would* be permitted to testify, mainly because the district court and the West Virginia Supreme Court of Appeals had previously found that he was qualified as an expert witness in other insurance claims handling for property damage cases.

During the trial, Safeco also elicited testimony from its engineer, Mr. Exley. The Sellmans objected to Mr. Exley's testimony and asserted that the jury should only be permitted to consider Mr. Exley's report and not his live testimony. The district court overruled the Sellmans' objection and allowed Mr. Exley to testify on three limited topics.

After the conclusion of the trial, the jury returned a verdict for Safeco. The Sellmans then filed a motion for a new trial, which the district court denied. The Sellmans then timely appealed.

II.

This Court reviews a district court's grant or denial of summary judgment *de novo*, "viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party." *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the record, so viewed, gives rise to genuine factual disputes . . . then those questions must be resolved by a jury, not on summary judgment." *Dean v. Jones*, 984 F.3d 295, 301–302 (4th Cir. 2021).

In addition, the standard of review for evidentiary rulings, including the admission or exclusion of expert testimony, is abuse of discretion. Under the abuse of discretion standard, evidentiary rulings are entitled to "substantial deference," *United States v.*

5

*Russell*, 971 F.2d 1098, 1104 (4th Cir. 1992), and subject to harmless error review, *United States v. Johnson*, 587 F.3d 625, 637 (4th Cir. 2009). Likewise, we review a district court's order granting or denying a new trial for abuse of discretion, "giv[ing] the benefit of every doubt to the judgment of a trial judge." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (cleaned up); *see also Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004) (explaining that a trial judge has discretion in determining whether a new trial is warranted).

### III.

The Court first addresses the district court's grant of partial summary judgment in favor of Safeco regarding *Hayseeds* damages. On appeal, the Sellmans contend that the district court erred in finding no genuine dispute as to any material fact and granting summary judgment in favor of Safeco on the issue of whether the Sellmans substantially prevailed and whether their attorney's services were necessary. Specifically, the Sellmans argue that the district court did not construe facts in the light most favorable to them and should not have attributed any dilatory delay to the Sellmans.

Under West Virginia Law,

> [w]henever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

*Hayseeds*, 352 S.E.2d at 74. When determining whether a policyholder has substantially prevailed, "a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds." *Miller v. Fluharty*, 500 S.E.2d 310,

6

322 (W. Va. 1997). Moreover, when a policyholder makes a demand during the negotiations, "the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information." *Id.* An "insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract, and therefore, whether the insurance carrier is liable for the policyholder's consequential damages under [*Hayseeds*] and its progeny." *Id.*

The primary goal of *Hayseeds* damages is "for all policyholders to get the benefit of their contractual bargain: they should get their policy proceeds promptly without having to pay litigation fees to vindicate their rights." *Bailey v. Bradford*, 12 F.Supp.3d 826, 836 (S.D. W.Va. 2014) (citing *Miller*, 500 S.E.2d at 321). Ultimately, for an insurer to meet its contractual obligation it must perform a *prompt* investigation, meaning one that is "performed readily or immediately," or involves "responding instantly." *Miller*, 500 S.E.2d at 326 n.12.

Finally, to show that a policyholder is entitled to attorney's fees, the policyholder "must show that but for his or her attorney's services such settlement would not have been reached in light of the undue delay in investigating the claim." *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647, 652 (W. Va. 1990).

Based on these principles, we find that the district court did not err in determining that the Sellmans had not substantially prevailed on their claim or that the Sellmans failed to show that their attorney's services were necessary.

7

Indeed, there was no conflict as to which the Sellmans could substantially prevail,[1] because, as the district court found, Safeco tried multiple times to contact the Sellmans to settle the claim and, once *the Sellmans* reengaged in that process, Safeco paid their demand promptly. Specifically, after waiting months for their contractor to become available for an inspection, the Sellmans provided Safeco with an initial estimate for the repairs in April 2021 and an updated estimate in May 2021. In response, Safeco informed the Sellmans near the end of May that it wanted to conduct another inspection to address the differences between the Sellmans' estimates and Safeco's engineer report, so that the parties could agree on damages. After that reinspection was conducted, Safeco emailed the Sellmans for clarification of the demand amount in Mr. Selep's letter. Safeco then received a second estimate from the Sellmans' contractor bringing the total estimate to $251,540.00. Two days after receiving the second estimate, Safeco agreed to pay the amount that the Sellmans had demanded, in full.

While insurers may not cause undue delay, they are entitled to some time to investigate the claim. *Miller*, 500 S.E.2d at 324. Ultimately, Safeco responded to the Sellmans' final estimates only six days after receiving them. Further, after clarifying the math in the Sellmans' estimates, Safeco not only agreed to the settlement amount proposed in Mr. Selep's letter, but also agreed to issue an additional payment for moving expenses. Thus, in looking at the totality of the Sellmans' negotiations with Safeco, it cannot be said

---

[1] The parties dispute whether filing a lawsuit or property damage action is a prerequisite to obtaining *Hayseeds* damages. While the parties present an interesting legal question, the Court need not decide it at this juncture.

8

that the Sellmans substantially prevailed as that phrase is used for purposes of *Hayseeds* damages.

The record also makes clear that Safeco tried multiple times to investigate the Sellmans' claim with no response from the Sellmans, *prior* to Mr. Selep's representation. What's more, as noted by the district court, it does not appear that counsel for the Sellmans engaged in any extensive legal work that he would not have otherwise done if Safeco had not promptly investigated the Sellmans' claim. Most of Mr. Selep's efforts were administrative – not legal. For example, during counsel's representation of the Sellmans, Mr. Selep sent a demand letter, helped to arrange a re-inspection that Safeco had previously tried to schedule with the Sellmans to no avail, and emailed with Safeco to clarify various amounts and estimates. None of these tasks suggest that Mr. Selep's work was necessary to settle the Sellmans' claim.[2] While Mr. Selep certainly helped to arrange the re-inspection of the Sellmans' home, Safeco had already attempted to get updated information from the Sellmans to settle the claim before Mr. Selep's engagement. Thus, it does not appear from the record that Mr. Selep's limited involvement was necessary to compel *Safeco* to act, such that Safeco should be responsible for the Sellmans' attorney fees. In sum, the Sellmans have presented no evidence that "but for" their attorney's intervention,

---

[2] The Court recognizes that Safeco noted in its claim file that the Sellmans "retained an Attorney," and also stated that the payment to the Sellmans was a "business decision." However, without more, that is insufficient to establish that Mr. Selep was the "but for" cause of Safeco's payment.

9

Safeco would not have provided the benefits for the damage to their home. *Jordan*, 393 S.E.2d at 652.

Accordingly, the district court properly granted summary judgment in favor of Safeco on the Sellmans' claim for *Hayseeds* damages.

## IV.

Next, with respect to the trial court's disposition of their two remaining claims, the Sellmans assert that the district court abused its discretion and substantially erred by (1) excluding their expert witness, Chris A. Johnson, (2) allowing Safeco's expert, Mr. Exley, to testify, and (3) for denying their motion for a new trial. The Court will address each argument in turn.

### A.

In granting Safeco's motion to exclude Mr. Johnson, the district court held that Mr. Johnson's opinions were inadmissible under Federal Rule of Evidence 702. Specifically, the district court noted that the Sellmans' expert had "not worked as a claim representative for over 30 years, he has no apparent experience in West Virginia, and he is not a West Virginia attorney."

Under Federal Rule of Evidence 702, district courts have the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (citing *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 597 (1993)). Testimony "is relevant if it has 'a valid scientific connection to the pertinent inquiry.'" *Belville,* 919 F.3d at 232 (internal citation omitted). To be reliable, an expert's testimony "must be based on scientific, technical, or

10

other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Id.* (internal citations omitted).

The Sellmans fail to show that the district court made "a clearly erroneous factual finding" or "error of law" by excluding their expert witness. The Sellmans assert, as they did before the district court, that Mr. Johnson should have been admitted as an expert witness because he is an attorney with an active law license in Ohio, and "his CV establishes his extensive insurance expertise involving actual claims handling and supervision/management of claims, including property damage claims." Appellants' Br. 33.

As the district court explained, however, the Supreme Court of Appeals of West Virginia and the District Court of the Northern District of West Virginia have made clear that an expert is not qualified to offer an expert opinion on West Virginia insurance claims where the expert "has not adjusted an insurance claim in over twenty years, has not done so in West Virginia, and is not a West Virginia attorney." *Giles v. Liberty Mut. Fire Ins. Co.*, No. 5:17-CV-141, 2018 WL 10339631, at *3 (N.D.W. Va. Dec. 7, 2018). This is also consistent with this Court's application of Rule 702. *See Mod. Auto. Network, LLC v. E. All. Ins. Co.*, 842 F. App'x 847 (4th Cir. 2021) (affirming the exclusion of an insurance expert who had no experience with the matters relevant to the dispute).

Here, the Sellmans' expert, Mr. Johnson, has not worked as a claims representative for many years and was not admitted to practice law in West Virginia. The Sellmans respond that Mr. Johnson worked for national insurance companies. Indeed, the district court acknowledged the same. However, the district court did not err in excluding Mr.

11

Johnson because the court was not presented with any proof that Mr. Johnson handled any claims in West Virginia. Thus, the district court did not abuse its discretion or substantially err in excluding Mr. Johnson.

Additionally, the district court correctly noted that Mr. Johnson's proposed testimony was inadmissible under *Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346 (W. Va. 2004). In *Jackson*, the West Virginia Court of Appeals held that an expert is not permitted to testify regarding legal conclusions or questions of law. *Id.* at 356. The Sellmans argue that Mr. Johnson should have been permitted to testify to "the ordinary practices of claims handling/ adjustment and settlement within the industry" as was stated in their Expert Witness Disclosures statement. Appellants' Br. 16. However, Mr. Johnson's expert report indicated that he was to testify to the applicable law concerning Safeco's conduct and opine on legal conclusions, which is precisely the kind of testimony that is impermissible under *Jackson* and its progeny and our own case law. *See United States v. Melvin*, 508 F. App'x 209, 211 (4th Cir. 2013) ("[A]n expert generally is not permitted to apply law to facts to reach a legal conclusion, as such testimony is not considered helpful to the jury."). Thus, the district court also did not abuse its discretion or err in excluding Mr. Johnson based on his proposed expert testimony.[3]

---

[3] The Sellmans also argue that, at a minimum, the trial court erred in not allowing them to call Mr. Johnson as a rebuttal witness. In support of their argument, the Sellmans note that their Expert Disclosure Report stated that Mr. Johnson *may* offer opinions relative to those provided by Safeco's experts at trial. J.A. 42 (emphasis added). However, at no point during the trial did the Sellmans attempt to call Mr. Johnson as a rebuttal witness. Further, the Sellmans cite no case law establishing that a trial court abuses its discretion in (Continued)

12

B.

Further, the district court did not abuse its discretion or substantially err when it permitted Safeco's expert, J. Rudy Martin, to testify.  The Sellmans argue that the district court committed substantial error in permitting Safeco's insurance expert, Mr. Martin, to testify because Mr. Martin is less qualified as an expert than Mr. Johnson, has no practical experience handling the day-to-day responsibilities of a claim adjuster, and has not handled property damage claims.  However, Mr. Martin has over 30 years of experience practicing law in West Virginia and handling property damage and bad faith claims.  Moreover, both the West Virginia Supreme Court of Appeals and the U.S. District Court for the Northern District of West Virginia have already recognized that Mr. Martin is qualified to testify as an expert on insurance claims handling and property damage suits in West Virginia.  *See, e.g.*, *Moore v. Allstate Ins. Co.*, 2013 WL 3185085, at *4 (W. Va. July 24, 2013) (holding that "Mr. Martin is an attorney who has extensive experience in the insurance industry with substantial knowledge of claims handling practices"); *Giles v. Liberty Mut. Fire Ins. Co.*, Civ. Act. No. 5:17-CV-141, Dkt. 63 at 2, (N.D. W.Va. Dec. 7, 2018).  Thus, the district court properly exercised its discretion in allowing Mr. Martin to testify and did not commit substantial error.

---

excluding a rebuttal witness, where the plaintiffs did not attempt to call the proposed expert as a rebuttal witness during trial.  Thus, this Court is not persuaded.

13

C.

The Sellmans further argue that the district court abused its discretion and erred in permitting Safeco's engineer, Mr. Randal Exley, to testify. Specifically, the Sellmans contend that Mr. Exley's opinions were irrelevant and that "the probative value of any claimed expert opinion and evidence by Mr. Exley, if any, regarding any engineering issue or actual physical damage to Plaintiffs' home, which has already been resolved, was substantially outweighed by the damage of confusing the issues, misleading the jury, prejudicing the Plaintiffs' claims, causing undue delay, and wasting time." The Court finds these arguments unpersuasive.

Whether evidence is relevant is a determination that rests largely within the discretion of the trial court. *Beaty Shopping Ctr., Inc. v. Monarch Ins. Co. of Ohio*, 315 F.2d 467, 471 (4th Cir. 1963). As such, a trial court's balancing of the evidence's probative versus prejudicial value "will not be overturned except under the most 'extraordinary' of circumstances." *United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th Cir. 1984) (internal citation omitted).

Here, the record provides ample support for the district court's decision to permit Mr. Exley's testimony. First, the district court limited Mr. Exley's testimony to three topics: (1) "why the finishes needed to be removed," (2) "as to the movement of the house on the sill plate," and (3) "whether the house was structurally sound." Each category was directly related to issues raised by the Sellmans during the trial. For example, regarding the finishes being removed, the Sellmans argued that Safeco's two-tiered decision to readjust the claim after removing the interior finishes was unnecessary. Mr. Sellman also

14

testified that the home's sill plate was in the proper position prior to the accident and was only moved after the fact. Finally, Mr. Sellman testified as to whether the house was structurally sound. Therefore, the district court did not abuse its discretion or err in permitting Mr. Exley's testimony as he only testified to issues that were related to issues that the Sellmans raised during trial.

V.

The final issue on appeal is whether the district court erred in denying the Sellmans' motion for a new trial under Federal Rule of Civil Procedure 59.

Whether a new trial is warranted is within the discretion of the trial court. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 500 (4th Cir. 2001). A district court can grant a motion for a new trial if it finds that "the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice." *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010).

The gravamen of the Sellmans' motion for a new trial is that the district court erred in its evidentiary decisions regarding the expert testimony of Mr. Johnson, Mr. Martin, and Mr. Exley. However, as this Court has already found that the district court did not abuse its discretion in making the above evidentiary rulings, the district court likewise did not err in denying the Sellmans' motion for a new trial based on those same grounds.

VI.

In sum, we affirm the district court's grant of summary judgment for Safeco on the claim for *Hayseeds* damages and affirm the district court's denial of summary judgment to

15

the Sellmans on the same.  Additionally, we find that the district court did not abuse its discretion in its evidentiary rulings or in denying the Sellmans' motion for a new trial.

*AFFIRMED*